# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **JAMES R. DRIGGERS,** | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | * Civil Action No.: 16-00011 |
| | * |
| **CALIBER HOME LOANS, INC.,** | * |
| | * |
| Defendant. | * |

## COMPLAINT

**COMES NOW** James R. Driggers, as Plaintiff in this proceeding and against the above-referenced Defendant as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), and 12 U.S.C. § 2617.

2. The Court has supplemental jurisdiction pursuant 28 U.S.C. § 1367(a) over the state law claims herein.

3. Venue is proper here because the events giving rise to Plaintiff's cause of action occurred in this district.

## THE PARTIES

4. Plaintiff, James R. Driggers (hereinafter referred to as "Plaintiff" or "Driggers"), is over the age of nineteen years and a resident citizen of Baldwin County, Alabama.

5. Upon information and belief Defendant, Caliber Home Loans, Inc., (hereinafter referred to as "Caliber" or "Defendant"), is a foreign corporation doing business in the State of Alabama.

## FACTUAL ALLEGATIONS

6. On April 13, 2007, Plaintiff executed a real estate mortgage with Beneficial Alabama, Inc., for $125,996.80. The loan was secured by his principal residence and is therefore a consumer debt.

7. Caliber is a mortgage loan servicer. The term "servicer" means the person responsible for servicing of a loan.

8. The principal business of Caliber is loan servicing.

9. The term "servicing" means receiving [collecting] any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

10. At all relevant times, Caliber was servicing the Plaintiff's loan on behalf of the actual owner of the loan.

### SERVICING OF THE LOAN BY BENEFICIAL

11. Plaintiff's loan was initially serviced by Beneficial.

12. During 2009 and 2010, Mr. Driggers had trouble making his mortgage payments to Beneficial because his hours at work had been reduced.

13. At all times pertinent hereto, Mr. Driggers received his mail, including his statements from Beneficial, at a post office box.

14. Mr. Driggers was surprised when he received a letter from the Sirote law firm, on behalf of Beneficial, stating that a foreclosure on his home had taken place April 9, 2010. This was because he had not received any notice of the foreclosure and had no knowledge of it.

15. He called the Sirote law firm and Beneficial inquiring about the foreclosure and was told that the foreclosure notices were mailed to his home address.

16. Mr. Driggers did not receive mail at his home address and, at all relevant times, did not even have a mailbox there.

17. Beneficial had purchased Plaintiff's home at a foreclosure sale on April 9, 2010 and eventually filed an ejectment action in the Circuit Court of Baldwin County, Alabama.

18. Driggers filed an answer and counter-claim alleging, among other things, wrongful foreclosure.

19. On August 19, 2010, Mr. Driggers filed a petition for bankruptcy relief.

20. The parties, Driggers and Beneficial, eventually reached an agreement in September of 2011. The settlement agreement called the foreclosure to be set aside, a loan modification, that brought the loan current, and other things. A motion was filed with the Bankruptcy Court seeking approval of the settlement was granted October 11, 2011.

21. The state court case was dismissed on January 24, 2012.

22. However, Beneficial, in breach of the parties' agreement, failed and refused to have the foreclosure set side.

23. Mr. Driggers learned that the foreclosure had not been set aside during the early months of 2013 when he tried to purchase insurance on the home. He also checked the status his property taxes and learned, according to the Baldwin County Tax Collector, the property was still owned by Beneficial.

24. After some investigation, it was determined that Beneficial never filed the documents with the Baldwin County Probate Court reflecting the parties' agreement to set aside the foreclosure.

25.     Plaintiff's counsel contacted the counsel for Beneficial and Beneficial on several occasions requesting the filing of the documents setting the foreclosure aside to no avail.

26.     Because of Beneficial's breach of the settlement agreement Plaintiff was forced reopen the state court case on January 17, 2014.

27.     The motion to reopen the state court case was granted on May 27, 2014 and thereafter a motion enforce the settlement agreement was filed on was filed on May 30, 2014.

28.     On June 3, 2014, the state court ordered Beneficial to comply with the parties' settlement agreement and a consent order setting the foreclosure aside was entered by the court on July 11, 2014. The parties' original agreement called for Beneficial to have the consent order recorded in the probate court but it did not do so until December 17, 2014.

### CALIBER ASSUMES SERVICING OF THE LOAN

29.     Mr. Driggers received a letter dated May 15, 2015 from Beneficial saying that the servicing of his loan would be transferred to Caliber, the present defendant, effective June 1, 2015.

30.     However, Mr. Driggers received on June 1, 2015 from Beneficial an "informational mortgage statement" which indicated that he owed currently owed $1,407.75 which included an amount of $724.64 for lender advanced taxes and insurance.

31.     A few days later, Mr. Driggers received a welcome letter from Caliber dated June 9, 2015.

32.     The next day he received a letter from Caliber, dated June 10, 2015, which indicated that his loan had been purchased by a trust and indicated that he owed $1,678.77, plus $61,848.77 for "fees/costs."

33.     At the time Caliber assumed servicing of Driggers' account it was in default or considered by Caliber to be in default.

34. On August 21, 2015 and on September 2, 2015, Mr. Driggers had a notice of servicing error and a qualified written request sent to Caliber, informing Caliber that his loan had been modified by the prior servicer and requested that the status of his loan be corrected.

35. Caliber responded to the QWR/NOE's but failed to correct Plaintiff's account. Caliber also failed to provide specifically requested information. Instead, Caliber only provided a payment history and a copy of its forced placed insurance policy.

36. The payment history was in two parts. One portion was the history of payments made to Beneficial and the indicated that the loan had been modified by Beneficial. The other portion indicated that Driggers had made all of his payments since Caliber began servicing the loan.

37. Caliber had at least two different opportunities to properly respond to qualified written requests and notices of servicing errors sent to it on Plaintiff's behalf and failed to do so.

38. Caliber took no reasonable measures to correct the error identified in Plaintiff's letters. Since its September 30, 2015 response, Caliber has failed to comply with the mortgage modification agreement.

39. Among its other obligations under RESPA Section 2605(e), Caliber was required to make any "appropriate corrections" to the account. In this case, this required, at a minimum, an investigation of Plaintiff's claim that Caliber was not complying with his loan modification and settlement agreement. Because of Caliber's failure to correct its treatment of Plaintiff's account, he has been damaged as a result. He has incurred expenses in sending the qualified written request which, because of Caliber's inaction, has been for naught, late charges, attorney's fees, inspection fees, court costs and other fees. This constitutes damages suffered resulting from Caliber's failure to comply with its Section 2605(e) duties.

40. Furthermore, Plaintiff has also been caused to worry and lose sleep because Caliber has threatened to foreclose on his home despite the fact he is current on his loan as modified.

41. On information and belief, Caliber has failed to implement the loan modification agreed to by Beneficial and Driggers in October 2011. By Caliber's actions and inactions, it has failed to follow the terms and conditions of the loan modification and has applied his payments incorrectly and continues to do so.

42. On information and belief, Caliber negligently, wantonly, and/or willfully failed to take action to use payment funds to satisfy monthly mortgage payments as they came due pursuant to the modified loan agreement.

43. On information and belief, and standard practice in the loan servicing industry, Beneficial supplied Caliber with information indicating that the loan had been modified.

44. Calber negligently failed to properly investigate and failed to consult its own records and as a result Plaintiff's account was not corrected.

## COUNT I
## NEGLIGENCE

45. The allegations in the above paragraphs are hereby asserted and realleged by reference, as if fully and completely set out herein.

46. Defendant has been negligent in its servicing of Plaintiff's mortgage. Defendant's negligence includes, but is not limited to, its failure to review the file as received from Beneficial and accurately account for the payments made by Plaintiff. These actions constitute negligence and Plaintiff has suffered damage as a proximate result thereof.

**WHEREFORE, THE PREMISES CONSIDERED,** after all due proceedings, Plaintiff requests that the Court enter judgment in his favor against Caliber and award compensatory

damages, including mental anguish and emotional distress, as well as punitive damages, attorney's fees and costs.

## COUNT II
## WANTONNESS

47. The allegations in the above paragraphs are hereby asserted and realleged by reference, as if fully and completely set out herein.

48. Caliber has been wanton in its servicing of Plaintiff's mortgage. Defendant's wantonness includes, but is not limited to, its failure to accurately account for the payments made by Plaintiff and to apply the funds and impose charges which it knew or should have known were incorrect. These actions constitute wantonness and Plaintiff has suffered damage as a proximate result thereof.

**WHEREFORE, THE PREMISES CONSIDERED,** after all due proceedings, Plaintiff requests that the Court enter judgment in his favor against Caliber and award compensatory damages, including mental anguish and emotional distress, as well as, attorney's fees, punitive damages and costs.

## COUNT III
## (VIOLATIONS OF RESPA)

49. Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

50. Section 6(d) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), grants borrowers the right to submit a "qualified written request" ("QWR") to his loan servicer requesting information and documents pertaining to the servicing of his loan. That provision also grants borrowers the right to submit a notice of servicing error ("NOE"), identifying perceived errors committed by the servicer. 12 U.S.C. § 2605(e).

51.     A QWR and NOE must sufficiently identify the borrower, the account and the perceived servicing error. *Id.*

52.     Recognizing the prevalence of servicing errors and the damage they can cause American families if not corrected, the federal Consumer Financial Protection Bureau recently exercised its authority under RESPA and clarified the borrower's rights to have errors corrected. See 12 C.F.R. § 1024.35.

53.     Under Section 2605(e) and the implementing regulations ("Reg. X"), including the recent amendments thereto which servicers must take the following actions upon receipt of a QWR and/or NOE:

- Provide a written acknowledgment of the correspondence within five days of the servicer's receipt of the QWR;

- Within 30 days conduct a reasonable investigation of the errors identified in the borrower's notice and make all appropriate corrections to the account and provide a the borrower with written explanation of the corrections made, the effective date of the correction and contact information for further assistance;

- If, after reasonable investigation, the servicer determines that no error was committed, it must, within 30 days of receipt of the notice, provide the borrower with a written explanation of reasons for its determination, a statement of the borrower's right to request documents relied on by the servicer in reaching its determination and contact information for further assistance; either the reason for the servicer's belief that the account is being serviced correctly or a description of the changes made; and

8

> ➢ If a servicer determines that it is not required to comply with these requirements then it must, within five days after receipt, provide written notice to the borrower setting forth the reasons for such determination.

54. Plaintiff's mortgage is a "federally related mortgage loan" within the meaning of 12 U.S.C. § 2602(1).

55. Defendant is a "servicer" with respect to Plaintiff' loan as that term is defined in 12 U.S.C. § 2605(i)(2).

56. Plaintiff's August 21, 2015 and September 2, 2015 letters constitute "qualified written requests" and a "notice of servicing errors" within the meaning of 12 U.S.C. § 2605(e) and Reg X.

57. Caliber has violated 12 U.S.C. § 2605(e) by failing to respond to Plaintiff's QWRs and NOEs as required under that section and Reg. X. Specifically, Caliber failed to conduct any reasonable investigation of the errors described in Plaintiff's letters and failed to correct Plaintiff's account to reflect terms of Beneficial and Driggers' modification Agreement.

58. Caliber has also violated 12 U.S.C. § 2605(k) in at least the following ways:

> ➢ Failing to take timely action to respond to Plaintiff's notice of servicing error; and

> ➢ Failing to comply with the requirements set out in Reg. X regarding responding to a QWR and a NOE.

59. Plaintiff has suffered actual damages as a proximate result of Caliber's failure to comply with Section 2605(e).

**WHEREFORE**, Plaintiff requests that this Court enter a judgment against Caliber for violation of the RESPA, awarding the following relief:

  a. Statutory and actual damages for each violation as provided in 12 U.S.C. § 2605(f);

  b. Reasonable attorney's fees, and costs expended in this proceeding; and

  c. Such other and further relief as the Court may deem just and proper.

## COUNT IV
### (FDCPA VIOLATIONS)

59. The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

60. This is a claim against Defendant for multiple violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 ("FDCPA").

61. Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6). Caliber has attempted to collect a debt which is owed to another and/or it obtained the debt and servicing rights after default.

62. The debt which Caliber attempted to collect from Plaintiff is a "debt" as defined by the FDCPA, 15 U.S.C. § 1692a(5).

63. Defendant has violated the FDCPA in connection with its collection attempts against Plaintiff. Defendant's violations include, but are not limited to, the following:

  a. Attempting to collect amounts which are not authorized by any contract or permitted by law. This is a violation of 15 U.S.C. § 1692f(1);

  b. Attempting to collect a debt by use of false, deceptive and/or misleading statements aimed at coercing the Plaintiff to pay the debt in violation of 15 U.S.C. § 1692e;

  c. Taking or threatening to take non-judicial foreclosure action in the absence of a legal right to do so in violation of 15 U.S.C.A. § 1692f(6).

64. The actions taken by Defendant in violation of the FDCPA occurred within one year of the filing prior to this action.

65. As a proximate result of Defendant's FDCPA violations, Plaintiff has suffered actual damages.

66. As a result of its violations of the FDCPA, Defendant is liable to Plaintiff for compensatory damages, statutory damages, costs and attorneys fee.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against Defendant for the following:

    a. Actual damages;

    b. Statutory damages pursuant to 15 U.S.C. 1692k;

    c. Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k;

    d. Such other and further relief as this Court deems just and proper, the premises considered.

**RESPECTFULLY** submitted on this the 6th day of January, 2016.

                        */s/Earl P. Underwood, Jr.*_____
                        EARL P. UNDERWOOD, JR.
                        Attorney for Plaintiff

**OF COUNSEL:**
**UNDERWOOD & RIEMER, P.C.**
**21 S Section Street**
**Fairhope, Alabama 36532**
**Phone:   251.990.5558**
**Email: epunderwood@alalaw.com**

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY OF THE ISSUES IN THIS CASE.**

                        */s/Earl P. Underwood, Jr*_____
                        **Earl P. Underwood, Jr.**

**THE DEFENDANT WILL BE SERVED BY CERTIFIED MAIL AS FOLLOWS**:

| Registered Agent Name | C T CORPORATION SYSTEM |
|---|---|
| Registered Office Street Address | 2 NORTH JACKSON ST., SUITE 605 MONTGOMERY, AL 36104 |